United States District Court
Southern District of Texas
**ENTERED**
March 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| NICHOLAS FUGEDI, *in his capacity as trustee Carb Pura Vida Trust*, §§§§ | |
| Plaintiff. §§ | |
| VS. §§§ | CIVIL ACTION NO. 3:19–CV–00249 |
| UNITED RENTALS (NORTH AMERICA) INC., ET AL., §§§§ | |
| Defendants. § | |

## **MEMORANDUM AND ORDER**

Before me are competing motions for summary judgment (Dkts. 45, 52), Defendants' Motion to Expunge Lis Pendens (Dkt. 90), Plaintiff's Motion for Clarification of Defendants' Assertion that this Court has Already Ruled (Dkt. 99), and Plaintiff's Motion for Leave to Supplement the Summary Judgment Record (Dkt. 100).

### **BACKGROUND**

This is an action to declare and quiet title concerning valuable property located at 829 Yale Street in Houston, Texas (the "Property").[1] This dispute is contentious and involves multiple parties. The Property is burdened with many

---

[1] The Property is more accurately described as All of Fisher Estates at Yale, a subdivision in Harris County, Texas, according to the map or plat thereof recorded under Film Code No. 671146 of the Map of Records of Harris County, Texas (being a replat of Lots 5 & 6 and the adjoining North one-half (2) of Lot 7, Block 245, Houston Heights, according to the map or plat thereof, recorded in Volume 1, Page 114, Map Records, Harris County Texas).

liens and has a convoluted history of conveyances. On top of that, there are salacious allegations of fraud and other skulduggery. This sordid history bleeds through every filing in this case. While those many details are interesting, as I've mentioned in an earlier Order, the briefing in this case has been far from clear. *See* Dkt. 96 at 1. ("The history surrounding the Property is complicated, as are the legal arguments employed by the litigants. This combination has resulted in briefing that obfuscates, rather than clarifies the critical issues."). In the interest of clarity, I set forth only the basic facts of the specific dispute between Plaintiff Nicholas Fugedi ("Fugedi"), who is acting in his capacity as Trustee of the Carb Pura Vida Trust, and Defendants.[2] I reserve the nitty gritty factual details surrounding certain transactions involving the Property for the Analysis section below.

On July 22, 2019, Yale Development, LLC, ("Yale Development") executed a General Warranty Deed that it recorded the next day at RP-2019-317072 of the

---

[2] I collectively refer to all of the defendants as "Defendants." Defendants include the following parties: Steadfast Funding, LLC; Initram, Inc.; RJL Realty, LLC; Eternal Investments, LLC; Bruce Robinson; Dale Pilegram, Trustee of the Pilgeram Family Trust; Joseph C. Hibbard; Kornelia Peasley-Brown; Salvador Ballestero; Margaret M. Serrano-Foster, Trustee of the Margaret M. Serranto-Foster Trust Dated 12/02/2005; Richard R. Melter, Trustee of the Richard R. Melter Revocable Living Trust; Liberty Trust Company, LTD Custodian FBO Vincent Paul Mazzeo, Jr., IRA; Joe Saenz; Patrick Grosse, Trustee of the Grosse Family Trust Dated 12/31/2004; Eric Verhaeghe; Stephen K. Zupanc; Liberty Trust Company, LTD, Custodian FBO Adam K. Hruby IRA #TC005383; Vincent Investments, Inc. AKA Vincent Investments; Equity Trust Company Custodian FBO Stephen (Steven) Krieger IRA; Judy M. Schnars; Joseph Dersham; Joyce Dersham; Walter Kaffenberger; Christel Kaffenberger; Mike Berris (Berres); Jason Sun; Equity Trust Company Custodian FBO Erica Ross-Krieger IRA; Elm 401K-PSP, Laurel Mead and Edwin A. Mead, Trustees; and James T. Smith, Trustee of the James T. Smith Trust.

Official Public Records of Harris County, declaring that for $10 in consideration it sold and conveyed the Property to a grantee identified as the Carb Pura Vida Trust ("2019 General Warranty Deed"). *See* Dkt 52-2 at 407–412. Defendants challenge this conveyance on several grounds, many of which relate to certain liens that Defendants held against the Property at various times prior to the execution of the 2019 General Warranty Deed. In addition to the lien related arguments, Defendants challenge the effectiveness of the 2019 General Warranty Deed, arguing that Yale Development's "attempted conveyance . . . to [the Carb Pura Vida Trust] is void on its face for lack of a Grantee." Dkt. 45 at 10. Because I agree with Defendants that the 2019 General Warranty Deed is void, Fugedi has no basis to receive any relief in this suit and summary judgment for Defendants is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

To defeat a motion for summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some

metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Darden v. Simplicity Fin. Mktg., Inc.*, No. 4:18-CV-1737, 2019 WL 6119485, at *1 (S.D. Tex. Nov. 18, 2019).

## ANALYSIS

Fugedi asserts claims for trespass to try title and quiet title. Fugedi also seeks declaratory relief, which necessarily presupposes his success on the claims for trespass to try title and quiet title.

### A.  TRESPASS TO TRY TITLE

Texas law allows a person to bring a trespass-to-try-title action, which "is the method of determining [legal] title to lands, tenements, or other real property." TEX. PROP. CODE § 22.001(a). "To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not

4

abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). The plaintiff can prevail only "upon the strength of his own title," *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018), "not on the weakness of a defendant's title." *Martin*, 133 S.W.3d at 265.

Defendants argue that Fugedi cannot prove a regular chain of conveyances from the sovereign or establish superior title out of a common source because the 2019 General Warranty Deed is void and ineffective. I agree. Because Fugedi has not established his superior title to the Property, Defendants are entitled to summary judgment.

In Texas, among other requirements, a conveyance of real estate requires an existing grantor and grantee. *See* 5 TEX. PRAC., LAND TITLES & TITLE EXAMINATION § 32.1 (3d ed.) ("A transaction involving the conveyance of title to land, or an interest in land, presupposes the participation of two or more parties, but at least one grantor and one grantee, who are necessary for the instrument to be operative. A deed which does not name or in some manner designate a grantee, is inoperative to convey the legal title."). Indeed, "a deed is void if the grantee is not in existence at the time the deed is executed." *Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 787 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quotation omitted). *See also* 5 TEX. PRAC., *supra*, § 32.7 ("Every instrument of conveyance must have a grantee. And as a general rule, a deed can be made only to grantees in existence or alive at the time of the execution of the deed.").

Under Texas law, "the term 'trust' refers not to a separate legal entity but rather to the fiduciary relationship governing the trustee with respect to the trust property." *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006) (cleaned up). As explained by the Fifth Circuit, "[a] trust cannot possess anything as it is not an entity under Texas law." *Hollis v. Lynch*, 827 F.3d 436, 443 (5th Cir. 2016). In other words, in Texas, a trust cannot serve as a grantee because it does not "exist" and it is incapable of taking title to real property for purposes of real estate conveyances. To acquire real property, legal title must vest in the trustee of a trust. *See Jameson v. Bain*, 693 S.W.2d 676, 680 (Tex. App.—San Antonio 1985, no writ) ("A trust is a method used to dispose of property; the trustee is vested with the legal title and the right of possession of the trust property, but holds it for the benefit of the beneficiary. The beneficiary is vested with the equitable title to the trust property.").

The Texas Trust Code confirms this point. The Texas Trust Code defines "trust property" as "property . . . transferred to or acquired or retained by the trustee for the trust." TEX. PROP. CODE § 111.004(17). The term "'trustee' means the person holding the property in trust." *Id.* § 111.004(18). Importantly, the term "person" is defined to include individuals and various types of legal and commercial entities, but it does not include a run-of-the-mill trust. *See id.* §

6

111.004(10).³ Here, the 2019 General Warranty Deed identifies 2017 Yale Development, as the grantor and the Carb Pura Vida Trust as grantee. Fugedi's name is not mentioned, written, or otherwise disclosed anywhere in the 2019 General Warranty Deed. Thus, the 2019 General Warranty Deed is void because it does not identify an existing grantee capable of taking legal title to the Property. *See* 5 TEX. PRAC., *supra*, § 32.1 ("A deed will not pass title to a grantee not in existence; a grantee capable of taking is necessary for the validity of an instrument of conveyance." (footnotes omitted)).

Fugedi attempts to sidestep this conclusion with two arguments. First, he purports to have remedied the mistake by filing corrected affidavits and a revised deed under the Texas Property Code.⁴ *See* Dkts. 100-1, 100-2, 100-3. Next, he argues that the Carb Pura Vida Trust was created under Michigan law, and under Michigan law, a trust is a legal entity capable of taking property in its own name. I am unpersuaded.

---

³ The definition of the term "person" does include a "business trust." *Id*. § 111.004(10)(H). This term, "business trust," is not defined in the Texas Trust Code. However, Black's Law Dictionary defines the term as "[a] form of business organization, similar to a corporation, in which investors receive transferable certificates of beneficial interest instead of stock shares." *Trust*, BLACK'S LAW DICTIONARY (11th ed. 2019). The trust involved in this case is not alleged to be a business trust.

⁴ Fugedi moved to supplement the summary judgment record by adding these documents. *See* Dkt. 100. That motion (Dkt. 100) is granted. To be clear, I am considering the corrective instruments filed as Dkts. 100-1, 100-2, 100-3, which were recorded at RP-2021-104446, RP-2021-104447, and RP-2021-120946 of the Official Public Records of Harris County.

**Texas Corrective Instruments.** The Texas Property Code provides two different methods of correcting previously recorded instruments, one for correcting nonmaterial errors and one for correcting material errors. *See* TEX. PROP. CODE §§ 5.028–5.029. *See also Lyle v. Midway Solar, LLC*, No. 08-19-00216-CV, 2020 WL 7769632, at *14 (Tex. App.—El Paso Dec. 30, 2020, no pet.). Here, the parties dispute which provision applies, and whether Fugedi's corrected affidavits and revised deed fulfill the requirements of those provisions. Although a close call, Fugedi's supplemented filings attempt to substitute grantees which is a material correction that must comply with § 5.029. *Compare AIC Mgmt. Co. v. AT&T Mobility, LLC*, No. 01-16-00896-CV, 2018 WL 1189865, at *7 (Tex. App.—Houston [1st Dist.] Mar. 8, 2018, pet. denied) (applying § 5.029 because the correction was not "to the spelling of a party's name, but a substitution of an entirely different party as grantee"), *with In re Hernandez*, No. 18-33200, 2019 WL 113664, at *8 (Bankr. S.D. Tex. Jan. 4, 2019) (applying § 5.028 because the correction did not involve substituting parties but instead sought to correct "a mistaken reversal of the grantor's and grantees' names"), *and Pense v. Bennett*, No. 06-20-00030-CV, 2020 WL 5948801, at *5 n.9 (Tex. App.—Texarkana Oct. 8, 2020, no pet.) (applying § 5.028 because the affidavits did not involve substituting parties but instead merely "corrected the capacity of the grantor and grantee").

Under § 5.029, a valid correction instrument must be: "(1) executed by each party to the recorded original instrument of conveyance the correction instrument

8

is executed to correct or, if applicable, a party's heirs, successors, or assigns; and (2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded." TEX. PROP. CODE § 5.029(b). This is where Fugedi's attempted corrective instruments fail.

As I've already explained, the 2019 General Warranty Deed did not identify a legally recognizable grantee. The original conveyance is invalid. No amount of correction instruments filed with the recording office will change that. Even if this type of error could be corrected, it is simply impossible to comply with § 5.029 because the alleged grantee (the Trust) can't sign the correction instrument. Thus, as a matter of law, Fugedi's corrective instruments are all invalid. *See AIC Mgmt. Co.*, 2018 WL 1189865, at *9 ("Because AIC's Correction Deed was not executed by . . . the grantee in the original instrument, or by its successors or assigns, the Correction Deed does not comply with section 5.029, as a matter of law, and is invalid.").

**Michigan Trust Law.** To be frank, I'm not exactly sure it was even necessary for me to delve into Michigan trust law. *See Teas v. Kimball*, 257 F.2d 817, 821 (5th Cir. 1958) ("The land was located in Texas and the law of that state must be applied in determining the title thereto."). Nonetheless, as far as I can tell, Michigan law is consistent with Texas law.

Under Michigan law, "[t]he separation of legal and equitable title is one of the distinctive features of the trust relationship. Legal title vests in the trustee to

9

be held for the benefit of the beneficiary." *Apollinari v. Johnson*, 305 N.W.2d 565, 567 (Mich. Ct. App. 1981). This is why Michigan courts have recognized:

> It is the duty of the trustee to administer the trust for the benefit of the beneficiaries, to control and protect the property of the trust, to enforce any claims of the trust, and to marshal and collect outstanding trust property. There can be no doubt that the trustee of the [trust] is the party who actually owns the claims asserted . . . in this matter.

*In re Beatrice Rottenberg Living Tr.*, 833 N.W.2d 384, 393 (Mich. Ct. App. 2013) (citations omitted). This lines up perfectly with the definitions contained in the Michigan Trust Code. Specifically, the Michigan Trust Code defines "trust" as

> a fiduciary relationship with respect to property that subjects the **person** who holds title to the property to equitable duties to deal with the property for the benefit of another **person**, which fiduciary relationship arises as a result of a manifestation of an intention to create it. Trust includes an express trust, private or charitable, with additions to the trust, whether created by will or other than by will, and includes a trust created by statute, judgment, or decree under which the trust is to be administered in the manner of an express trust. Trust does not include a constructive trust or a resulting trust.

MICH. COMP. LAWS ANN. § 700.2901(j) (West 2010) (emphasis added). Importantly, the Michigan Trust Code defines "person" as "an entity and an individual, **but does not include . . . a trust**." *Id.* § 700.2901(h) (emphasis added). This authority convinces me that in Michigan, as in Texas, a trust itself is not a legal entity that can hold title to property.[5] For this reason, Fugedi's argument falls flat.

---

[5] Fugedi has cited various cases supposedly standing for the proposition that trusts in Michigan can take title to property in their own name, as opposed to in the name of the trustee. I've reviewed those cases, and none stand for that proposition.

10

\* \* \*

In sum, I find that the General Warranty Deed recorded at RP-2019-317072 of the Official Public Records of Harris County is void. I also find that the corrective instruments recorded at RP-2021-104446 (Dkt. 100-2), RP-2021-104447 (Dkt. 100-1), and RP-2021-120946 (Dkt. 100-3) of the Official Public Records of Harris County are all invalid as a matter of law. Fugedi's trespass to try title claim fails.

**B. QUIET TITLE**

To successfully quiet title to the Property, Fugedi "must show that: (1) he has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012). In a suit to quiet title, a plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see [that] he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). To prevail on a claim to quiet title, "the plaintiff must recover upon the strength of his own title and not the weakness of the defendant's title." *Hurd*, 880 F. Supp. 2d at 767 (quotation omitted).

As explained above, I have determined that the 2019 General Warranty Deed is void. Because the 2019 General Warranty Deed is Fugedi's sole claim to right, title, or ownership of the Property, Fugedi has no interest in the Property and his

quiet title claim must fail. *See Ocwen Loan Servicing, LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584, 588 (S.D. Tex. 2015) ("The plaintiff must prove, as a matter of law, that he has a right of ownership." (quotation omitted)).

## C. REQUESTS FOR DECLARATORY JUDGMENT

The Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural device that creates no substantive rights. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir.1984). Because I have determined that Fugedi cannot prevail on his claims for trespass to try title and quiet title, his declaratory action cannot survive. *See Goosby v. JPMorgan Chase Bank, N.A.*, No. 4:19-CV-0609, 2020 WL 8259060, at *5 (S.D. Tex. Dec. 18, 2020) ("Without an underlying cause of action, suits for declaratory or injunctive relief must be dismissed."); *Dudley v. Specialized Loan Servicing, LLC*, No. H-19-0102, 2019 WL 6718682, at *3 (S.D. Tex. Nov. 5, 2019) ("[G]iven the absence of an underlying, substantive claim, neither declaratory nor injunctive relief is available.").[6]

---

[6] Defendants moved to have the notice of lis pendens filed by Fugedi in the Official Public Records of Harris County, Texas (RP-2019-490131) expunged. *See* Dkt. 90. "A lis pendens is a notice to warn all persons that certain property is the subject matter of litigation, and that any interests during the pendency of the suit are subject to its outcome." *In re Briar Bldg. Hous. LLC*, 609 B.R. 589, 597 (Bankr. S.D. Tex. 2019). Under Texas law, I must order the notice of lis pendens expunged if I determine that "the pleading on which the notice is based does not contain a real property claim." TEX. PROP. CODE § 12.0071(c)(1). Because I have determined that Fugedi's live pleading, the First Amended Complaint, does not contain a viable real property claim, the lis pendens must be expunged.

## CONCLUSION

For the reasons explained above:

1. Plaintiff's Motion for Leave to Supplement the Summary Judgment Record (Dkt. 100) is **GRANTED**;

2. The General Warranty Deed recorded at RP-2019-317072 of the Official Public Records of Harris County is **VOID**;

3. The corrective instruments recorded at RP-2021-104446 (Dkt. 100-2), RP-2021-104447 (Dkt. 100-1), and RP-2021-120946 (Dkt. 100-3) of the Official Public Records of Harris County are **ALL INVALID AS A MATTER OF LAW**;

4. Defendant's Motion to Expunge Lis Pendens (Dkt. 90) is **GRANTED**. Accordingly, the lis pendens filed by Fugedi on November 4, 2019 in the Official Public Records of Harris County, Texas (RP-2019-490131) is expunged.

5. Plaintiff's motion for summary judgment (Dkt. 52) is **DENIED**;

6. Defendants' motion for summary judgment (Dkt. 45) is **GRANTED** to the extent that it requests that Plaintiff Nicholas Fugedi, who is acting in his capacity as Trustee of the Carb Pura Vida Trust, take nothing by this suit against Defendants, and Fugedi is adjudicated to possess no right, title, claim, or interest to the Property; and

7. Defendants' Assertion that this Court has Already Ruled (Dkt. 99) is **DENIED as moot**.

Finally, the parties are **ORDERED** to attend a hearing, via Zoom, on Friday, April 9, 2021, at 8:30 a.m. to discuss what, if anything, is left for me to decide in this case, as well as the entry of final judgment. My case manager will email the parties a Zoom link.

SIGNED on this 31st day of March 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE