IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

NICHOLAS FUGEDI                          3:19-cv-0249
in his capacity as Trustee,
Carb Pura Vide Trust

V.                                       December 18, 2023
                                         Galveston, Texas
                                         9:00:47 a.m.

UNITED RENTALS (NORTH AMERICA), INC. ET AL

MOTION HEARING

BEFORE THE HONORABLE ANDREW M. EDISON

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff                    J. Marcus Hill
                                 Hill & Hill, PC
                                 1770 St. James Place
                                 Suite 115
                                 Houston, Texas 77056

                                 Johnie S. Patterson, II
                                 Walker & Patterson
                                 P. O. Box 61301
                                 Houston, Texas 77208-1301

                                 Zachary Smith
                                 Kent Hanszen
                                 Hanszen Laporte, LLP
                                 14201 Memorial Drive
                                 Houston, Texas 77079

                                 James D. Pierce
                                 Law Office of James Pierce
                                 115 Guenther Street
                                 Sugar Land, Texas 77478

Proceedings from official electronic sound recording;
transcript produced by court approved transcriber.

DIGITAL SCROLL TRANSCRIPTION                      281.382.9862

2

For Defendants                          Christopher B. Ramey
                                        RB Legal Group, PLLC
                                        215 South 4th Street
                                        Wallis, Texas   77485

 Case Manager                           Ruben Castro

Electronic Recording Operator      Shannon Holden

THE COURT:  Okay.  Good morning, everyone.

This is the United States District Court for the Southern District of Texas, Judge Andrew Edison, presiding. We are here today on Case 3:19-cv-249, Fugedi versus United Rentals, et al.

Could I get introductions from counsel, starting with the Plaintiff side, please?

MR. PATTERSON:  Good morning, Your Honor; Johnie Patterson here on behalf of Mr. Fugedi, Trustee.

THE COURT:  Good morning, Mr. Patterson.

MR. PIERCE:  James Pierce also on behalf of Mr. Fugedi.

THE COURT:  Good to see you, Mr. Pierce.

MR. HANSZEN:  Kent Hanszen and Zack Smith also here on behalf of Mr. Fugedi, Judge.

THE COURT:  Mr. Hanszen and Mr. Smith, good to see you.

And on the Defense side?

MR. RAMEY:  Christopher Ramey here for all the Defendants.

THE COURT:  Hello, Mr. Ramey.  Good to see you.

Okay.  So, thank you all very much.  I apologize for the delay in doing this.  I know there's some scheduling issues with you all, and then my wife had to have surgery last week.  So, we had to move it.  If you're interested, she's

4

doing well.

Okay.  I've got a couple of things I just want to throw out there.  After our hearing in November, I've gone back, read everything and thought about it.  This is just submissions you made.  And I'm – these are going to be direct questions, so help me if you know.  I don't want rambling answers.  I want narrowly focused – all right.  I put – you know, I actually put a word limit on the response.

Are there any factual issues in this case?

Fugedi's side?

MR. PATTERSON:  No, Your Honor.

THE COURT:  Mr. Ramey?

MR. RAMEY:  No, Your Honor.  I don't believe they have presented any summary judgment evidence controverting that, the facts.

THE COURT:  What's the cause of action besides evidence?

MR. PATTERSON:  Having quiet title in Fugedi as the Trustee.

THE COURT:  Mr. Ramey?

MR. RAMEY:  Quiet title in the foreclosing lender.

THE COURT:  Okay.

Mr. Patterson, in your brief in a whole page of discussion about a trespass to try title claim, I'm totally lost.  Why – what does that have to do with anything?  Because

as I understand it, quiet title and trespass to try title are two completely separate causes of action.  The Court – so, I just – I honestly do not understand why cases or is the – this whole discussion about a trespass to try title claim relates to this case.

Help me out.

MR. PATTERSON:  Well, we had conflicting assertions of title to the property, and even if that's – that's the appropriate way to address – you know – two people saying that we have title to the same property.

It's – I say, quiet title.  I think the trespass goes hand in hand with the quiet title.  To say, they don't have title, we do or determine that we have sold in good title as against these parties.

THE COURT:  Okay.  And quiet title seeks an equitable remedy whereas a trespass to try title is seeking a legal remedy afforded by Texas statute.  But neither side has raised the Texas trespass to try title statute.  Or is it – in other words, there's a whole discussion on looking at the statute and looking at the statute.  I just don't understand why.

MR. PIERCE:  It's briefed.  The trespass to try title statute is briefed as well as the Rules of Civil Procedure is covered by the trespass to try title in the brief.

THE COURT:  I know it – I know it's briefed.  I don't understand why it's briefed is what I'm saying, really – that

clause – I just want to – I went back this weekend.  There's no claim for trespass to try title.

MR. PIERCE:  And that was actually days of reasonable conduct in this case –

THE COURT:  What –

MR. PIERCE:  -- in the Defendants' Complaint with respect to try title and quiet title, Judge.  They're inde- -- you're right.  They're independent claims, but both are asserted.

THE COURT:  Show me where.

MR. PIERCE:  In the Complaint?

THE COURT:  Yes, but why in the Complaint?

But don't worry.  I'll go back – I'll go back and look.  I don't think that's the case, but I'll – either it is or –

MR. RAMEY;  Your Honor, if I may?

THE COURT:  No.

Okay.  Help me out on Fugedi's side.

Well, let me step back.

Steadfast's argument is, in a nutshell, that I should not only look at the title documents – there's an issue with the title document now, but initially, don't only always – don't only look at the chain of custody, the title documents, that I have to peel back the onion, if you will.  Because, for example, although the title documents say there

was consideration, Mr. Ramey says, there really wasn't consideration. Mr. Ramey says, hey, a trust cannot be used to perpetrate a fraud, and they're all exposed to circumstances around the creation of the trust, in which case, to raise – raise this issue.

My understanding from Fugedi's side is, your view is, hey, all these tapes and all this, I can – whether it is admissible or not, I can throw that out the window. That doesn't matter. Am I right on that or wrong?

MR. PATTERSON: Correct.

THE COURT: Okay. Why doesn't it matter?

MR. PATTERSON: It doesn't affect title. Title is – if you look at the real property records, the documents identified in the abstract and that determines title. What – what does someone saying something on an alleged recording have to do with title to real property? It has nothing. He can say, you know, I robbed a Brinks truck and used – and used the money. That has nothing to do with title as reflected in the real property records.

And so, if – this – in an alleged case they're nothing but a fight show, a circus that Mr. Ramey filed in each of his ten lawsuits to say, oh, look at these bad people, look what I found when – it has nothing to do with title. Zero. It can't affect title.

THE COURT: Okay.

MR. RAMEY:  May I respond, Your Honor?

THE COURT:  Hold on.

(Pause in the proceedings.)

MR. HILL:  You mean, we're actually going to have a meeting today?

As to Laport, I can't hear you.

MR. PATTERSON:  We're in – we're in court, Marc.  The Court's in session.

MR. HILL:  No kidding?

MR. PATTERSON:  Yes, sir.

MR. HILL:  Well, how about that?  Is it all right that I be at my next thing; take my sunglasses off.  It's changed so many times I thought I was an expert.

MR. PATTERSON:  Marc, Marc, Marc.

MR. HILL:  Yes.

MR. PATTERSON:  Court has already started.  Mute yourself, please.

MR. HILL:  Court?  Where is the Judge?

MR. PATTERSON:  He's in the top left corner.  Please mute yourself.

MR. HILL:  I'll do it right now.

(Pause in the proceedings.)

THE COURT:  Okay.  Mr. Ramey, I'll let you respond?

MR. RAMEY:  Thank you, Your Honor.

THE COURT:  And actually, I want to know what cases

do I look at that tell me either I just look at title issues from Fugedi's side or I look beyond title issues, because this issue has confused me.  And I've – this is a – this is a threshold issue.  Do I look beyond the title issues or not?  Because Mr. Ramey cites a bunch of cases, and I've got to go back on every single one.  But he cites a bunch of cases with the idea that, hey, is it – you know, the assumption is a sham; it doesn't matter whether the title is correct or not.  It doesn't fit; I have to peel back the onion.  So help me out on some cases, both sides, that tell me do I ignore the case, or do I look at the case?  Okay.

          MR. RAMEY:  Judge, if I may?

               First off, I'll be real clear.  Title law 101, the most Seminal case in Texas title law, *Westland* it specifically says is – it says that when it's regardless of the tapes or anything else, but the reason of the tapes and all the other evidence of fraudulent transfer are relevant is because it is not only for the jurisdictional standing, manufacturing and diversity, it is not only for those issues or the questions, the ability of the Court that is obvious to you, but also the simple fact that a quiet title action is an equitable cause of action and trust – a trust is an equitable relationship.  And under Texas statutory and common law, it is very clear that the trust does not exist if, for instance, the trust instrument does not find it in writing and completely

valid as of the date of transfer, which is no summary judgment of the trust cannot exist to perpetrate the fraud.  The seminal case on that is *Land v. Marshall* (phonetic) and adopted as well the inference to prior precatory acts is actually referenced it in your file.

So, further, a deed procured by fraud is also void.  So, the very status of the Plaintiff had been proven to have been a fraud, the existence of the trust and its entire purpose has been proven to be a fraud.  Those issues preclude the acquisition of title and preclude the bringing of a quiet title action.  It also breaks the deed.  So, *Carhand* (phonetic) and *Lawford* (phonetic) are your cases on a deed procured by fraud in some of your seminal cases.

And when it comes to the title itself, the audio tapes make it clear that Fugedi is not a real party in interest even if he was a bona fide purchaser, even if he was a legitimate Trustee, that the purpose of the trust was for Alexandria (phonetic) and quiet title to acquire the properties in a voidance of the judgment against the judgment lender.  Those are the two realms.

So, the simple fact that all of the diversity jurisdiction, there's standing of the Plaintiff to bring this suit, it's the validity of the transfer itself are all quarter-layered and key and some of this stuff is the actual legal and title issue, simply because of this document you

have to take.

There is no summary judgment evidence that the controverting evidence has brought and a fraudulent trust can't take title ever, even if it is signed in writing anywhere. A trust that is not signed in writing before the conveyance doesn't exist, and it can't take title in a deed or in a transfer and the validity of the trust has to be in place at the time of the transfer. The –

THE COURT: Well, what's Fugedi's response to that?

MR. PIERCE: The trust doesn't have to be in writing and even a standing to even challenge the existence of the trust. The fact is the closing documents have a written trust agreement in it. It's valid on its face. You would never challenge the trust agreement in and of itself. It's in the title documents. There is – it names the beneficiary. It names the trustee. It names the corpus of the property. Therefore, the trust exists.

There is a deed which the Fifth Circuit says that the trust is holding. It is in – to Fugedi and the trustee holds title to this property. That's what the purpose of the – that was the Fifth Circuit's opinion in the last case that went down.

I do have a response to the case law that the Court wants. If the Court will look at the case of *Nobles v. Marcus*. That's at 533 S.W.2d 923. This case can put a

proposition date.  The only thing that the Court can look at is the abstract and instruments and at page – at page 926, it says that for the Court to disregard anything that's in the property records the instrument must appear on its face or must be in fact one which is true to set such legal validity or capable of affecting a fraud.

So, in other words, it disregarded the instrument itself has to be fraudulent.  And there is nothing in the abstract – and in fact, they adopt our abstract. There's nothing in the abstract that show anything to be fraudulent.  So, on the cold record, the abstract and the charts that we provided the Court that shows meaning resolution at least tile is clearly iniquitous to Fugedi on the actual chart.

Now, if he wants to file a lawsuit someplace, which he has in many other places, for some sort of fraudulent transfer, he's done that.  But this case is a trespass to try title case, and it is solely – that's the sole pleadings in this case.  It's a trespass to try title case.  If he wants to go to Judge Ellison's court and sue for something else, but right now the Plaintiff in this case doesn't even own any other causes – doesn't own any causes of actions.  These are signed causes of action away.

So, between – the only causes of action that are currently exist in this court are the trespass to try title

and quiet title.  For a trespass to try title, the Court looks at the cold abstract, the abstract, which is, you know, that big.  It's – it's a stack of documents that we trace from in sovereign to date and which said the title is vested in the interest to Fugedi.  The only case the Court has to look at is the *Nobles* case.  And maybe they have found a case which cites to the *Nobles* case, both of which are cited in our brief, which say that you look at the cold abstract to determine what is title.  And unless the deed is set aside by Court order, it is to be given effect.

THE COURT:  Okay, Mr. Ramey.  Anything in *Nobles*, they should mark it.  Actually, the Supreme Court hasn't done this yet.  Is this procured by fraud or voidable only, not void?  That would be an action in the Supreme Court.  It is settled for such a deed as valid, and that brings prima facie evidence of title until there has been a successful suit to set it aside.

I need you to respond.

MR. RAMEY:  Well, two things, Your Honor.

Number one, with respect, this is going to be by any reading of title law a successful suit to set it aside, a title by judgment.

So, Number two, there is case law out of the Supreme Court, *Nobles,* to rectify the right of – there is case law reflecting the *Nobles* decision that expands on that,

specifically, when it comes to make a trust.  So, a deed that is procured by fraud in the *Land v. Marshall* case – that's the more recent Supreme Court case – is void.

And a deed procured by fraud is assertable by this quiet title argument, so that's sort of a circular argument.  But sort of I need to address this claim that, if you are making, that said that adopted their title abstract that's patently false, so.

THE COURT:  But I –

MR. RAMEY:  But that's probably –

THE COURT:  But I want to focus on my questions.  So –

I don't know if –

MR. RAMEY:  If you look at –

THE COURT:  Hold on.  Hold on.  Hold on, please.  Let me –

MR. RAMEY:  It absolutely cites a reason and it's already on the frontend.

(Pause in the proceedings.)

THE COURT:  Mr. Ramey, if there is a trespass to try title suit, how does that claim – how does that impact summary judgment?

MR. RAMEY:  It doesn't – the true title abstract which contains all of the deed records and the judgments that are relevant clearly requires *Steadfast* to secure your title.

The title instruments that were omitted from the Plaintiff's fraudulent abstract clearly win the case, and they are clearly a part of the record.  They are clearly a part of the real property records.  They clearly say that I really can't release the lien.  They clearly say that *Steadfast* – one is the deed and the other is the note.  One is a debt that has a valid first lien.  There is also an adjudication that that was not said title instrument and that both the – the lessor and the grantor were – lost a lawsuit over that issue, and they said that's the title to the place.

As a matter of law, the *Westland* case, no matter whether it's the valid trust or not, no matter who the trustee is, no matter how much money they take or didn't take, of course, Steadfast still wins both tracts of title and quiet title, because there's a written loan instrument that says, Alvarez can't release *Steadfast* lien.  *Steadfast* still has a valid first lien, and then anyone in full that took – took any advance to this property knows that and is bound to that as a matter of contempt regarding irrevocable presumption, presumptive law under the *Westland* case, title 101.

If this case can be won by the – by the Plaintiff, then there's not a single loan in all of the State of Texas that's ever been written that's valid, because it's – *Westland* is the fundamental foundation for real property law, and – that's what it is regardless of any other actions,

regardless of anything pled, regardless of any of the allegations of either party doesn't matter. The real property records and the abstract file that's what that proved that that wasn't this case. And that's why this very Court allowed Steadfast to foreclose. And I said that's won another case in the state court, Exhibit 92.

THE COURT: Well, what do you mean by that an interim state court allowed the state to foreclose – allowed Steadfast to foreclose?

MR. RAMEY: Yeah. That was the time this case started. This case originally was just at odds with foreclosures. Plaintiff filed this case as a TRO, and plus they're –

THE COURT: You mean by denying the TRO under the statute that – you would be able to – by denying the TRO – a statutory privilege?

MR. RAMEY: Yeah, sure. I mean, they tried to enjoin the foreclosure, said that's not a judgment saying you could foreclose but that's have the title document saying that you could foreclose. And this Court saw that and allowed the foreclosure to go ahead. And for good reason, because that's the way this case has to go under the title law regardless of anything, all said.

So, when you have a – when you have a valid in the trust, which Steadfast did, and you have a valid – valid

transferring of the lien, which Steadfast did, there's both recorded and they both say that I really can't release Steadfast lien and they say that Steadfast has a valid first lien to foreclose the property. It doesn't matter what they take. It doesn't matter what they knew. It doesn't matter what they thought. It doesn't matter who they are or whether they are legitimate. No matter if anyone that took this property at the time that Fugedi claims to have taken it loses this case to Steadfast because Steadfast's prior lien means under *Westland* that the property goes as purchased. It doesn't go to; it's open and shut. It's the simplest title issue as it could ever be. And if you look at the abstract, the Steadfast title it contains those documents with certified copies.

THE COURT: I disagree with you that this is "the simplest title issue as it could ever be." And I just – I don't – I don't see it that way. But –

MR. PIERCE: Your Honor, may I respond to that? Basically, I can probably help the Court.

THE COURT: Sure.

MR. PIERCE: The assignment fully vests in Alvarez in title to the deed for trust and the note that is the subject of the 2017 Neal stat (phonetic). The Alvarez is the owner. They sent us a letter saying, deal with Alvarez. So, he sent Mr. Kelly and in 2017 Neal a letter saying, please deal with

Mr. Alvarez.

Mr. Alvarez would be the person to sign a release.  Their – their claim is this – this other document, which is not "because it ain't" document.  But this other document says that Mr. Alvarez can't keep that without permission in writing.  Well, that's another lawsuit.  Plus Article 9, since this is an Article 9 note, says that he could deal with anyone, and that's what's wrong with his argument.

Additionally, we also presented evidence, but – may – actual their note that Alvarez gave to them was, in fact, endorsed back to Alvarez.  And we discussed that also at the last hearing.  Those are the responses to that.

THE COURT:  Let me ask you this.

In looking at – and I'm looking at the Complaint here.  I'm looking at – let me – quiet title – there's never a trespass to try title if there's clearly a claim, because this claim to trespass I haven't seen this drafted in any summary judgment motion.

MR. PIERCE:  I believe  I –

THE COURT:  I want to rule on this case to be honest. I do not – I mean, I've already ruled on one – but I mean, I do not want this case to come back from the Fifth Circuit. So, I'm not sure how I do that.  I write memos with their outstanding claim.

MR. PIERCE:  I think the Fifth Circuit in their

opinion described this as a quiet title on trespass to try title.  If you look at the Fifth Circuit's opinion – I've looked at the – you know, portions of the Complaint in it – and if it says take it, then we own an undivided interest; we need the title to be resolved in our name; I believe that that, you know, complies with e-mail eight, as far as receiving the trespass to try title claim and plus it was free.

THE COURT:  I guess I wanted to ask you –

MR. PIERCE:  No objection to the lack of pleadings.

THE COURT:  I'm sorry?

MR. PIERCE:  We moved for summary judgment on the issue.  There's been no – there was no objection to the lack of pleadings.  There is a – I mean, there were a lot of objections that have been made but no objection to the lack of pleadings.

MR. RAMEY:  I believe that stuff was in our first Motion to Dismiss.

And I'd, too, Your Honor, respectfully submit that the Motion to Dismiss is a threshold issue.  It really should be dealt with.

THE COURT:  I agree.  I totally agree.  That will have problems to do with who goes on first.

MR. RAMEY:  And, Your Honor, it is accumulative of the first page or the first sentence of the Fifth Circuit

opinion it says that Nicholas Fugedi file suits without filing any other property in East Texas.  That's the only issue we've ever had before us to our knowledge.

THE COURT:  Well, that's not true.  I mean, the summary judgment motion, Docket Entry 156, as filed, specifically talks about the – there's a whole section about trespass to try title.

MR. RAMEY:  Well, I think we addressed that in our response but also the fact that it's not pled and that's not really before the courts.  Anyway it doesn't change the outlay and that can be very clear.  Like this – when you had a recorded instrument in the title records that says, Plaintiff Alvarez and Dena Alvarez can never release Steadfast lien, that's it.  This case is over.  It doesn't matter whether Alvarez actually released it, whether Steadfast agreed to it, whether – whether the party bought it or not.  They are on notice that Alvarez cannot release the lien, and that is being dispositive.  And they're also on notice that Steadfast had a valid judgment and a valid first lien, and no matter what; once Fugedi takes that deed he's on written notice, you're rebuttably presumed under Texas Property Code 13.702 in *Westland* of the fact that that document proves that Alvarez can't release the lien, so therefore, they can't rely on lien release as a matter of law.

It also said that Steadfast had the original

note, in which they did.  The debt follows the note, so he knows that even if Alvarez did release it and until Steadfast releases it, he can't buy the property free and clear from Steadfast lien.

He also notes as a matter of presumptive, you know, absolute presumption, that Steadfast had a valid lien, valid judgment and that both Alvarez and (indiscernible) -DL were in default, had a judgment against them so that that judgment allowed Steadfast to foreclose.

But it doesn't matter whether there was a true assignment or other assignment or anything else.  It doesn't matter.  Nothing else matters.  The title law – for a try title claim that's the only thing that matters.  Was there an instrument that put Fugedi on notice that Steadfast might have a lien?  That's all there has to be.  And once that's there, he can't take – he's on duty to investigate, find out whether the lien is valid or not.  He cannot take title superior to Steadfast lien, ever.  No one could; no one ever could.

THE COURT:  Okay.

Mr. Patterson, Mr. Pierce, if you were writing the opinion, and there is – and if Mr. Ramey says, hey, the audio tapes demonstrated it's just a big scamming fraud, what would you say to that, sir, if you were in the Judge's chair?

MR. PIERCE:  I would say that the trust instrument is valid in and of itself.  You could say that it's the document

in closing.  I would say that the trust instrument begins by the trustee and a beneficiary.  Therefore, it in and of itself is valid.

Notwithstanding that, even if it were the trustee's deed, the Steadfast party is a third party to the transaction that was scamming and challenged the trust itself.  This is any property relationship between the trustee and the beneficiary.

I mentioned – and if you want to keep going, I mean, there's another reason and it's just these parties don't even own these claims anymore, and they signed away their claims and it belongs to a non party in the suit.  But that would be the third one down the line.  I think it's – it's pretty simple.  A trust is a trust.  It creates a – and if this –

THE COURT:  Give me – I'm want to make sure I got the – the reasons in order.

The first – the second one is understanding the challenge.  In a seven-day order we're changing it, and the first reason was?

MR. PIERCE:  It's a trust.  There's a beneficiary and a trustee.  I get to – and let's assume the trustee has a beneficiary that's Al Capone.  It doesn't mean that there's not a trust relationship, either or.  Any – any – let's assume it's a mob boss.  It doesn't mean it's not a trust

relationship and that the trust can't own property.  That's what the issue is.  The issue in this case is who owns property.

If you go back to the old case law, sometimes as an attorney those – takes the client's money and buys property and uses the attorney's – it needs to be held by an intervening trust for his client.  That's probably a resulting trust that's pending law for hundreds of years.  You don't need a trust instrument to create a trust.  It's a relationship to property.

Mr. Fugedi is a real person here.  He has stated that he's holding this property in trust for someone.  He has said – I quote this – he has said, "It's according to the written instrument."  But he's holding the property.  He is a real person.

So, he's having – and they say, fraud.  They're yelling fraud all the time.  Mr. Fugedi never talked to their people.  So, there's no fraud with Mr. Fugedi for the son on their people.  He also said they have a lien on the property.  That's incorrect.  There is no lien on the property that's held by the Steadfast crew.  They have a security interest in promissory note.  If they proceed under Article 9, which they admit they did not do, they could in theory foreclose on the promissory note and sending it to the – the deed of trust.  But they didn't do that.

They empowered Alvarez and they said, in full assignment that's in the – in abstract that he has the power to deal with his property.  They can take it back; they could have taken it back; they could have followed the steps, filed a – filed the documents into the property records saying, hey, Alvarez is in default, but we – we, therefore, are exercising our rights under Article 9; replete that.  They didn't do that.

So, all of those statements to Mr. Ramey about fraud don't have anything to do with this case.  It is a plain cold abstract case, is what the abstracts show.

THE COURT:  And let me ask you again.

MR. PATTERSON:  Yes.

Judge, if I can just add also, I think the Fifth Circuit gave the – gave us a very good easy outline to follow, because if you take the prior summary judgment order and the Fifth Circuit opinion there's just a couple of changes that need to be made, and that is who involves the deed was a sufficient deed into the trust, and we're done.  And that's exactly what the Court did last time.  And I think the Fifth Circuit really outlined it fairly simply.  The fact is –

It takes – or a non issue.  There – there – it can't be authenticated, Judge.  It absolutely cannot help.  All of the stuff would make it us back –

THE COURT:  Put down what time it is.  I'm merely on

vacation.

MR. PATTERSON:  Right.  Yes.

THE COURT:  Because let's assume you did have it. That's – that's  my question.  If it's inevitable, how does it affect the case?

MR. PATTERSON:  So what?  It doesn't – zero.

Because this, as Mr. Pierce said, it doesn't because this is a title case.  Right?  It's a title case, and Mr. Ramey wants you to look at the documents – look at the abstract, follow the abstract, and the answer comes to one answer and that's for the Fifth Circuit to this.  And this is – the deed is good to Fugedi.  That's where it ends.  And then, really –

THE COURT:  Right.  And I understand.  I guess there is really a dispute on whether – what the title documents show – we'll put all the documents together show – but I mean, what I'm hearing my argument on it is, should I, can I, could I look at documents beyond or information data outside the – the chain of title, and does it matter?

MR. PATTERSON:  No.

THE COURT:  If I look at a – I just want to start it on this trespass to try title issue, because if I look at a trespass to try title claim, the case law is clear, right, documentary evidence and title shall at trial be confined to the matters contained in the abstract of title.

MR. PATTERSON:  That's right.

And the Rules – the Rules tracks that as well.

THE COURT:  Right.  That's what the Rules say.

MR. PATTERSON:  Yes.

THE COURT:  But if quiet title – I guess that's what I'm trying to – sort of – I know it's an equitable nature.  I can't find anything on occasion – I don't know whether I can look beyond this, but I guess –

MR. PATTERSON:  Yeah, and I guess we've been a little bit sloppy in our language, but that – that's correct.  We believe the Court can fo- -- can focus on the abstract and focus on the documents and come up with an answer, because really that's – that's where the Fifth Circuit – that's where we landed the first time with the Fifth Circuit, and they sent us back and – and it just – there's no reason to go beyond that to get us the answer that we need.  It's really not – and quite frankly nothing that's been argued or raised changes any of that.

In addition, one thing – very important thing – Mr. Ramey is hanging his hat on this foreclosure.  There's not a foreclosure on either one of the abstracts.  It doesn't exist.  And this is another one of those things that they are creating, you know, like these alleged tapes.  It – it is a bunch of background noise that make this – try to make this more confusing, and it doesn't need to be and there's no need

to be.

To argue foreclosure and you allowed it, it's not on the abstract. Where is it, right? It doesn't exist as far as the abstract of summary judgment evidence is concerned, which leaves them the only argument of this – of collateral transfer of no lien, which we talked about at least at the last hearing, which you have to look at as a subsequent document to the assignment, which pushes the note and the deed of trust absolute ownership away from Steadfast.

So, they have nothing other than a lien on the note that they sold. That's it. That's their only interest in this case. Everything else is really just to make this as confusing as possible when it is really a straightforward process of looking at the abstract, determining what title is, and that's it. That's what we need.

We need a determination of who owns this property. Everything else falls into place, Judge. None of this background noise of, oh, this is – literally, who cares who the beneficiary of a trust is? What does it matter? It does not matter in the least. All that matters is the person who purchased this property; you have the Pura Vida documents. This lack of consideration is repeated over and over and over. It's just not true. The closing statement provides consideration. This property was bought. The lien was released, and the deed was executed. The deed was executed by

the owner of the note and the lien.

Everything else just, quite frankly, doesn't matter. Now, who owns the grantor? Who cares? Who cares? It was transferred. That's all that matters, and that's what we need to focus on. That's what we're asking the Court to focus on is just take the Fifth Circuit opinion, drop in the changes that they gave the Court, and we're ready to go.

MR. PIERCE: And the Fifth Circuit opinion does say the trespass to try title in footnote two of its opinion.

THE COURT: Well, no, none of us have to complain. There's enough language in – in – it only takes a cause of action in trespass to try title, because there's certainly enough language that references trespass to try title in the – in the Complaint. And now that I look at it, I'm clear that's one of the parties. So, that's clearly the formula.

Okay. Here's my only question to you all.

And let's go back then – I'm just trying to figure out what I can look at – who's signed the trespass to try title? I think that's clearly what I have to look at.

On the – on the quiet title, can I look at things beyond – should I, can I, could I look at things beyond the title documents? That's sort of my question.

And let's do this. If you could – finally. Any of you – I'm not sure why – well, let me do this.

If you would, by Friday, if there are any cases

you want me to read, just file a letter with no – I am dead serious on this – because otherwise I will strike it – if there is anything more than this, I will not look at your cases. "Dear Judge Edison" and then case cites, no explanation, no parentheticals – I'll read the cases. Okay? We got it?

Every time else I say, limit it to five pages; you don't need five pages, no certifies; they certify it.

I'm going to – in fact, I'm going to strike a ton of documents in these – in this – of the pleadings without following my rules. I mean, this filing and short of it clearly violates the Rules. I'll just strike that right now.

The – I've limited it to five-page – well, I'm just going to read it. I've ordered a five-page – in fact, it was Mr. Laporte's suggestion – limit it to five pages and five exhibits, five – pick easy – five pages and then you violate that, so I'm going to strike those pages as well.

So, we got to follow the Rules. If you have any cases you want me to read, please, please send me a letter with literally, again, "Dear Judge Edison" and then the case cites. I will take the motion under advisement. I'm working hard on it. I want to get you an opinion as quickly as possible, and I want this one to be the last opinion. If there's anyone else, they will have to wait.

So, the Fifth Circuit will write another one,

but hopefully, this will be the last one.

So, with all that said and done, I thank you very much.  I wish you all a wonderful holiday season.  Happy, healthy, prosperous new year, and then, have a great day.

We're off the record.

Thank you very much.

UNIDENTIFIED SPEAKER:  Thank you, Judge.

(Proceedings concluded at 9:45 a.m.)

31

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION


     I, Linda Griffin, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording and/or Zoom/Video of the proceedings in the above-entitled matter.


/s/ Linda Griffin                          June 5, 2024
Linda Griffin                                   Date

DIGITAL SCROLL TRANSCRIPTION                        281.382.9862